IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ORANGEBURG DIVISION

| | | |
|---|---|---|
| John W. Smith and Donna B. Smith, | ) | |
| | ) | Civil Action No. 5:16-cv-03905-JMC |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | **ORDER AND OPINION** |
| | ) | |
| Universal Property and Casualty Insurance | ) | |
| Co., Universal Risk Advisors, Inc., | ) | |
| Universal Adjusting Corporation, Janelle | ) | |
| Stevens, and The Ulmer Agency, Inc., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Before the court is a motion to remand the case to the Court of Common Pleas for Orangeburg County,[1] South Carolina filed by Plaintiffs John W. and Donna B. Smith ("Plaintiffs") (ECF No. 9.) Defendants Universal Property and Casualty Insurance Co., Universal Risk Advisors, Inc., Universal Adjusting Corporation, Janelle Stevens (together, "Universal"), and The Ulmer Agency, Inc. ("Ulmer") (collectively, "Defendants") oppose Plaintiffs' motion and ask the court to retain jurisdiction. (ECF Nos. 19, 20.) For the reasons set forth herein, the court **GRANTS** Plaintiffs' motion to remand (ECF No. 9).

**I. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

On October 4, 2016, Plaintiffs filed a complaint in the Court of Common Pleas for Orangeburg County, South Carolina, containing the following allegations. (ECF No. 1-1.) Plaintiffs, citizens of South Carolina, had a homeowner's insurance policy with Universal, a non-

---

[1] In their motion, Plaintiffs ask the court to remand the case to the Allendale County Court of Common Pleas. (ECF No. 9 at 1.) However, the case appears to have been filed in the Orangeburg County Court of Common Pleas (ECF No. 1-1 at 2, 5; ECF No. 9-1 at 1) and removed from there (ECF No. 1 at 1).

1

South Carolina insurer, which was procured through the services of Ulmer, a South Carolina insurance agency. (*Id.* at 5-7.) On June 25, 2015, a fire destroyed Plaintiffs' home, and, on the following day, Plaintiffs filed a claim under the policy. (*Id.* at 7.) In response to the claim and numerous other requests, Universal tendered several offers, but Plaintiffs allege that none of the offers were up to the full coverage limits in the policy. (*Id.* at 7-8.)

> With respect to Ulmer, the complaint alleges that
>
> [Ulmer] undertook a duty to advise Plaintiffs by assuring Plaintiffs that [Ulmer] would procure insurance that would meet and satisfy Plaintiffs' needs, namely to provide Plaintiffs with replacement cost coverage up to the limits of the policy. Moreover, [Ulmer] knew or should have known their advice was being requested and relied upon by Plaintiffs. Additionally, [Ulmer] knew that Plaintiffs had in fact reposed special trust and confidence in them with respect to their recommendation and selection of coverage for Plaintiffs' needs. By assuming or undertaking the duty to advise Plaintiffs and act as their fiduciary, [Ulmer] was required to exercise due care in giving advice and so acting.
>
> [Ulmer] breached its duty of care and thereby acted negligently by failing to procure insurance coverage that met Plaintiffs' needs . . . .
>
> . . . .
>
> Plaintiffs directly informed [Ulmer] . . . of the coverage needed on their home, including a policy that would pay full replacement cost up to the policy limits.
>
> [Ulmer] . . . represented to Plaintiffs that the Policy procured for Plaintiffs [Ulmer] would meet Plaintiffs' specific needs.
>
> . . . .
>
> As described above, [Ulmer] unambiguously warranted and promised Plaintiffs that [Universal] would provide the requested insurance coverage for damages caused to Plaintiffs' home or that they would procure the coverage necessary to protect Plaintiffs and their home.
>
> . . . .
>
> [Ulmer] . . . had and has fiduciary relationships and owed fiduciary duties and obligations to Plaintiffs. [Ulmer] at all times relevant was or should have been aware of the specific expectations and insurance needs of Plaintiffs,

> its failure to properly investigate the insurance coverage it procured and recommended for Plaintiffs, its failure to properly consider Plaintiffs' expectations and needs, and its failure to properly safeguard the rights and interests of Plaintiffs as described above.
>
> . . . . [Ulmer] breached its fiduciary duties owed to Plaintiffs, including but not limited to the duty to perform the . . . promise of providing insurance coverage to Plaintiffs to cover the specific needs of Plaintiffs . . . .

(*Id.* ¶¶ 35-36, 44-45, 52, 60-61.)

Based on these allegations, the complaint asserts causes of action against Universal for breach of contract and bad faith or breach of the implied covenant of good faith and fair dealing. (*Id.* at 9-10, 12-13.) It asserts causes of action against Ulmer for negligent misrepresentation, promissory estoppel, constructive fraud, and breach of fiduciary duties. (*Id.* at 13-16.) It also asserts causes of action for negligence, violation of the South Carolina Unfair Trade Practices Act ("SCUTPA"), S.C. Code Ann. § 39-5-10, *et seq.* (2014), and outrage against all Defendants (ECF No. 1-1 at 10-12, 16-17.)[2]

On December 14, 2016, Universal filed a notice of removal, pursuant to 28 U.S.C. § 1446, to which Ulmer consented, asserting that this court had jurisdiction over the matter under its diversity jurisdiction pursuant to 28 U.S.C. § 1332. (ECF No. 1.) Universal explained that all Defendants aside from Ulmer were not citizens of South Carolina and that Ulmer should be disregarded for determining whether the court has diversity jurisdiction because Ulmer had been fraudulently joined to defeat diversity jurisdiction. (*Id.*)

On January 3, 2017, Plaintiffs filed the instant motion to remand the case back to state court, arguing that Ulmer was not fraudulently joined and that this court lacked diversity jurisdiction because Plaintiffs and Ulmer are not diverse. (ECF No. 9.) Universal filed a response,

---

[2] The complaint states that it contains ten causes of action, but, because it omits a ninth cause of action, it contains only nine causes of action.

arguing that, for each cause of action Plaintiffs seek to bring against Ulmer, the complaint fails to assert a cognizable theory of liability or to allege sufficient factual matter to support Ulmer's liability. (ECF No. 19.) Ulmer later joined Universal's response to the motion. (ECF No. 20.) Having received the parties' arguments, the motion is now ripe for disposition.

## II. LEGAL STANDARD

To properly establish diversity jurisdiction, a defendant seeking removal must show complete diversity among defendants and plaintiffs. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005); *Mayes v. Rapoport*, 198 F.3d 457, 461 (4th Cir. 1999). Accordingly, "it [is] difficult for a defendant to remove a case if a nondiverse defendant has been party to the suit." *Mayes*, 198 F.3d at 461. A defendant may accomplish this feat, however, through the doctrine of fraudulent joinder.

To establish fraudulent joinder, the removing party must demonstrate either that the plaintiff "committed outright fraud in pleading jurisdictional facts, or that there is no possibility that the plaintiff would be able to establish a cause of action against the in-state defendant in state court." *Weidman v. Exxon Mobil Corp.*, 776 F.3d 214, 218 (4th Cir. 2015) (internal quotation marks omitted). "The party alleging fraudulent joinder bears a heavy burden—it must show that the plaintiff cannot establish a claim even after resolving all issues of law and fact in the plaintiff's favor." *Johnson v. Am. Towers,* LLC, 781 F.3d 693, 704 (4th Cir. 2015) (internal quotation marks omitted). "This standard is even more favorable to the plaintiff than the standard for ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6)." *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999). Thus, to defeat an allegation of fraudulent joinder, "'there need be only a slight possibility of a right to relief.'" *Mayes*, 198 F.3d at 466 (quoting *Hartley*, 187 F.3d at 426); *see also Hartley*, 187 F.3d at 426 ("Once the court identifies this glimmer of hope for the plaintiff, the jurisdictional inquiry ends.").

III. ANALYSIS

There is no dispute that both Plaintiffs and Ulmer are citizens of South Carolina or that the court must remand the case to state court unless Ulmer is disregarded for purposes of establishing diversity jurisdiction under the fraudulent joinder doctrine. (*See* ECF No. 9-1 at 4; ECF No. 19 at 2-3.) There is also no suggestion that Plaintiffs committed outright fraud in pleading jurisdictional facts; rather, this motion turns on whether Defendants have shown that there is no possibility of Plaintiffs succeeding on one of their causes of action against Ulmer in state court. (*See* ECF No. 9-1 at 4; ECF No. 19 at 2-3.) The parties' briefing proceeds by addressing, on a claim-by-claim basis, whether there is any possibility of Plaintiffs' success on any of their claims against Ulmer. (*See* ECF No. 9-1 at 7-15; ECF No. 19 at 3-6.) The court proceeds likewise.

**A. Negligence**

In support of its cause of action for negligence against Ulmer, Plaintiffs allege that Ulmer "undertook a duty to advise Plaintiffs by assuring Plaintiffs that [Ulmer] would procure insurance that would meet and satisfy Plaintiffs' needs, namely to provide Plaintiffs with replacement cost coverage up to the limits of the policy." (ECF No. 1-1 ¶ 35.) Defendants assert that Plaintiffs have no possibility of succeeding on this claim because, under South Carolina law, insurance agents do not have a duty like the one asserted in the complaint. (ECF No. 19 at 3-4.) Defendants are incorrect. Of course, "as a general rule, an insurance agent has no duty to advise an insured at the point of application, absent an express or implied undertaking to do so. A duty may be imposed, however, if the agent, nevertheless, undertakes to advise the insured." *Houck v. State Farm Fire & Cas. Ins. Co.*, 620 S.E.2d 326, 329 (S.C. 2005). In such circumstances, "an insurance agent or broker must exercise good faith, reasonable skill, care, and diligence. If, because of his fault or neglect, the agent fails to procure insurance, or does not follow instructions, or the policy issued

5

is void, or materially deficient, or does not provide the coverage he undertook to supply, the agent is liable to his principal." *Sullivan Co., Inc. v. New Swirl, Inc.*, 437 S.E.2d 30, 31 (S.C. 1993).

Here, the complaint alleges that Ulmer undertook to provide Plaintiffs an insurance policy under which the insurer would be obligated to pay out the coverage limits in the event of a total loss of the insured home. This is a sufficient allegation under South Carolina law for the court to conclude that Defendants have not demonstrated that Plaintiffs have no possibility of succeeding on their negligence claim on the ground that they fail to plead a cognizable duty Ulmer owed them. Defendants' last-ditch effort to argue that South Carolina law does not impose a duty on insurance agents to guarantee that insurers will pay the limits of the policy is irrelevant and is founded on a gross mischaracterization of the complaint. Although there may not be a general duty on insurance agents to procure a policy that guarantees the insurer will pay to the coverage limit, there is, in some circumstances, a duty to procure a policy in which an insurer guarantees it will do so if the agent undertook to procure such a policy on behalf of the insured. That is exactly the scenario that the complaint alleges here, and that is sufficient for the court to conclude that there is at least a glimmer of hope of succeeding on the negligence claim.

**B. Negligent misrepresentation, promissory estoppel, constructive fraud**

Defendants assert that Plaintiffs have no hope on succeeding on each of their causes of action for negligent misrepresentation, promissory estoppel, and constructive fraud because, in Defendants' view, the basis of the complaint is that Universal failed to pay up to the policy's coverage limits and not that the agency failed to obtain a policy with the type of coverage Plaintiffs sought. (ECF No. 19 at 4.) Indeed, Defendants assert that "Plaintiff[s] ha[ve] not alleged that Ulmer failed to procure the amount and type of coverage they sought." (*Id.*) This is a curious assertion, for the complaint straightforwardly alleges that Ulmer "fail[ed] to procure insurance

6

coverage that met Plaintiffs' needs" (ECF No. 1-1 ¶ 36), and the whole gist of the complaint with respect to Ulmer is indeed that Ulmer failed to procure the insurance coverage of a sufficient type. Defendants' brief argument with regard to these three causes of action appears to be based on the belief that the complaint can only allege either that coverage limits were not paid by Universal or else that Ulmer failed to procure sufficient coverage. Defendants' belief is unfounded; a complaint may allege both facts; and Plaintiffs' complaint alleges both facts. Thus, Defendants have failed to demonstrate that Plaintiffs have no hope of succeeding on these three causes of action.

**C. Breach of fiduciary duty**

Defendants assert that Plaintiffs have no hope of succeeding on their cause of action for breach of fiduciary duty against Ulmer for two reasons. First, Defendant argues that, in South Carolina law, there is no fiduciary duty between an insurance agency and its customers. (ECF No. 19 at 4 (citing *Pitts v. Jackson Nat'l Life Ins. Co.*, 574 S.E.2d 502 (2002)). In Pitts, the South Carolina Court of Appeals said:

> Although the relationship between an insurer and an insured has at times been characterized as "special," this has occurred only after the parties have entered into a mutually binding contract for insurance, specifically in the posture of an insured's claim of bad faith refusal to pay benefits due under an insurance contract. The conduct at issue in these cases arose based on the insurer's established contractual obligations.
>
> This case, however, requires us to review the context of an insurer/insured relationship from its inception, specifically, at the point of the application for insurance. Our research reveals no South Carolina case, and the parties have cited none, which establishes a fiduciary relationship at the application stage. In fact, our Supreme Court has found an applicant for an insurance policy does not stand in a fiduciary relationship with the insurer.
>
> . . . . [T]he cases clearly establish *the sale of insurance is an arm's length commercial transaction, which does not give rise to a fiduciary relationship*. Because an applicant is still operating in the marketplace at the point of purchase, the insurer is in a decidedly different position than after the contract has been entered into; thus, no heightened duty has attached.

7

*Pitts*, 574 S.E.2d at 507-08 (emphasis added) (internal citations omitted).

The court is not persuaded that *Pitts* and the cases that follow it preclude any glimmer of hope for insureds, like Plaintiffs, bringing a breach-of-fiduciary-duty claim against an insurance agency, like Ulmer. In the court's view, *Pitts* stands for the proposition that the sale of insurance by an insurer to an insured in an arm's length commercial transaction does not give rise to a fiduciary relationship because a "fiduciary relationship . . . cannot rest upon the mere relationship of insurer and insured." *Moses v. Mfrs. Life Ins. Co.*, 298 F. Supp. 231, 323 (D.S.C. 1968), *quoted in Pitts*, 574 S.E.2d at 508. Neither *Pitts* nor cases following it state that, as a categorical matter, a fiduciary relationship can never arise between an insurance agent and an insured. Thus, they implicitly leave open the possibility that a fiduciary relationship might arise between an agent and an insured if, for instance, the transaction was not truly at arm's length or other factors demonstrate that the parties' relationship goes beyond the mere sale of insurance. *See Great Am. Ins. Co. v. Mills*, No. 4:06-cv-01971-RBH, 2008 WL 2250256, at *10 (D.S.C. May 29, 2008) (questioning whether fiduciary relationship might exist between insurer and insured due to a long and close relationship). Here, the allegations in the complaint, read in a light favorable to Plaintiffs, could support a claim that something beyond a mere arm's length transaction occurred. Accordingly, the court concludes that Defendants have not demonstrated that Plaintiffs have no hope of succeeding on their breach-of-fiduciary duty claim on the ground that South Carolina law precludes the existence of a fiduciary relationship between Plaintiffs and Ulmer.

Second, Defendants assert that "Plaintiff[s] fail[] to allege that Ulmer procured the wrong type of insurance, procured too low limits of insurance, or any other act that could even conceivably constitute a breach of fiduciary duty." The court concludes that this argument results from an incorrect reading of the complaint, which, for the reasons stated in Part III.B, *supra*,

provides sufficient allegations of the breach of a fiduciary duty caused by Ulmer's failure to procure an insurance policy with sufficient coverage. Accordingly, the court concludes that Defendants have failed to demonstrate that Plaintiffs have no hope of succeeding on their breach-of-fiduciary duty claim on the ground that the complaint fails to allege a breach.

**D. Outrage**

Defendants assert that Plaintiffs have no hope of succeeding on their claim of outrage or intentional infliction of emotional distress ("IIED") because the complaint fails to allege a single outrageous act on the part of Ulmer. (ECF No. 19 at 5-6.) To recover on an IIED claim,

> a plaintiff must establish that (1) the defendant intentionally or recklessly inflicted severe emotional distress or was certain or substantially certain that such distress would result from his conduct; (2) the conduct was so 'extreme and outrageous' as to exceed 'all possible bounds of decency' and must be regarded as 'atrocious, and utterly intolerable in a civilized community;' (3) the actions of the defendant caused the plaintiff's emotional distress; and (4) the emotional distress suffered by the plaintiff was 'severe' so that 'no reasonable man could be expected to endure it.'

*Ford v. Hutson*, 276 S.E.2d 776, 778-779 (S.C. 1981). An insurer's refusal to pay under the terms of the policy can, in some circumstances, amount to an outrageous act forming the basis of an IIED claim.

The South Carolina Court of Appeals noted from reviewing IIED cases:

In the vast majority of cases where liability has been found, the common thread has been the existence of three factors. First, a pre-existing legal relationship between the parties has existed, typically a debtor-creditor, insured-insurer, landlord-tenant, physician-patient or employer-employee relationship. Second, the defendant's conduct has involved excessive self-help in asserting a legal right or avoiding a legal obligation flowing out of the relationship or coercive and oppressive abuse of an employee by the employer. Third, the evidence has clearly shown that the defendant calculatedly inflicted suffering or heedlessly and contemptuously disregarded the plaintiff's present emotional suffering either to force the plaintiff to accede to the defendant's wishes or to punish the plaintiff for prior failure to comply.

9

*Todd v. S.C. Farm Bureau Mut. Ins. Co.*, 321 S.E.2d 602, 610-11 (S.C. Ct. App. 1984), *quashed in part on other grounds,* 336 S.E.2d 472 (1985). With little other guidance on the issue, it appears that, under South Carolina law, an IIED claim by an insured may lie against an insurer so long as the insurer's alleged conduct is sufficiently outrageous.

Here, Plaintiffs' claim is against an insurance agency, not an insurer, and, despite Defendants' arguments to the contrary, Plaintiffs' complaint, read in the light most favorable to them, alleges that Ulmer engaged in an outrageous act, namely failing to procure a policy with sufficient coverage. Although the court has serious doubt that this conduct could be deemed outrageous for purposes of IIED liability, the court has located no South Carolina authority stating whether an insurance agent's failure to procure the insurance requested might, in some circumstances amount to an outrageous act for purposes of IIED. Because the issue has not been addressed by South Carolina courts, the court cannot say that Plaintiffs lack a glimmer of hope on their IIED claim merely because they base the claim on Ulmer's failure to procure a policy with sufficient coverage.

## IV. CONCLUSION

In sum, the court concludes that for six of Plaintiffs' causes of action against Ulmer, Defendants have failed to demonstrate that Plaintiffs have no hope of success in a South Carolina court.[3] Accordingly, the court concludes that Ulmer has not been fraudulently joined to defeat the

---

[3] Defendants also assert that Plaintiffs have no hope of succeeding on their SCUTPA claim against Ulmer because the claim involves an allegedly unfair trade practice regarding the business of insurance, which is exempted from SCUTPA's coverage. (ECF No. 19 at 5). Defendants are probably correct on this score. *See Whitehead v. Travelers Indem. Co. of Am.*, No. 3:15-cv-04200-JMC, 2016 WL 5920857, at *2 (D.S.C. Oct. 11, 2016) (citing S.C. Code Ann. § 39-5-40 (2014); *Trs. of Grace Reformed Episcopal Church v. Charleston Ins. Co.*, 868 F. Supp. 128, 132 (D.S.C. 1994)). However, the court declines to reach a decision on this matter because it has already concluded that Defendants have failed to demonstrate that Plaintiffs have no hope of success with respect to six other causes of action in the complaint.

court's diversity jurisdiction and that therefore the court lacks jurisdiction to entertain this matter based on diversity or otherwise. Accordingly, Plaintiffs' motion to remand (ECF No. 9) is **GRANTED**, and this action is **REMANDED** to the Court of Common Pleas for Orangeburg County, South Carolina, for further proceedings.

**IT IS SO ORDERED**.

*J. Michelle Childs*

United States District Court Judge

August 22, 2017
Columbia, South Carolina